UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN DOE a/k/a ███████████, | ) |
| JOHN DOE a/k/a | ) |
| ███████████, | ) |
| JOHN DOE a/k/a | ) |
| ███████████, | ) |
| JOHN DOE a/k/a ███████████, | ) |
| and JOHN DOES 1-11, | |
| | |
| Defendants. | |

CASE NO.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**JURY TRIAL DEMANDED**

Plaintiffs HP TUNERS, LLC, a Nevada limited liability company ("HPT"), by its attorneys, for its Complaint for Injunctive Relief ("Complaint") against Defendants JOHN DOE 1 a/k/a ███████████,[1] JOHN DOE 2 a/k/a ███████████, JOHN DOE 3 a/k/a ███████████, JOHN DOE 4 a/k/a ███████████, and JOHN DOES 5-11 (collectively referred to herein as "Defendants"),[2] states as follows:

### NATURE OF THE ACTION

1.      At substantial expense, hard work, and ingenuity over the course of many years and thousands of man hours, HPT has developed complete, cost-effective tuning and data-acquisition solutions for automobile enthusiasts and professional shops.

---

[1] Plaintiff cannot be certain of the gender of the John Doe defendants, so, for purposes of simplicity, it will refer to them individually using the pronouns "he" or "him," and using the pronominal adjective "his."

[2] "JOHN DOES 1-11" probably include, but are not limited to, users of the IP addresses ███████████, ███████, ███████, ███████████, ███████, and the phone number ███████████.

1

2.     Over the years, HPT has carefully guarded its proprietary products and source code in order to protect its trade secrets, specifications, and software.

3.     Defendants wrongfully obtained and possess HPT's confidential and proprietary source code, and have misappropriated HPT's trade secrets and proprietary information.

4.     Defendants wrongfully obtained and possess HPT's confidential and proprietary information, and have misappropriated HPT's trade secrets and proprietary information by hacking HPT's software and/or hardware devices to generate, create, use, or sell fraudulent application keys that were not purchased from HPT.

5.     This is an action against Defendants for: (i) violation of the Digital Millennium Copyright Act ("DMCA") under 17 U.S.C. §1201(a)(1)(A); (ii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq*.; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.; (v) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; (vi) breach of contract; and (vii) tortious interference with prospective economic relations.

## PARTIES

6.     HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.

7.     JOHN DOE 1, upon information and belief, an unknown individual, entity, or person does not reside in the State of Illinois.

8.     JOHN DOE 2, upon information and belief, an unknown individual, entity, or person does not reside in the State of Illinois.

2

9.      JOHN DOE 3, upon information and belief, an unknown individual, entity, or person does not reside in the State of Illinois.

10.     JOHN DOE 4, upon information and belief, an unknown individual, entity, or person does not reside in the State of Illinois.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction for the DMCA, CFAA, and DTSA claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction for the state-law claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred, and a substantial part of the property that is the subject of this action is situated, in this judicial district.

## BACKGROUND FACTS

13.     HPT is a niche business, which provides complete, cost-effective automotive tuning and data-acquisition solutions for enthusiasts and professional shops.

14.     HPT's business includes but is not limited to computer hardware and software, designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles, and watercraft) (the "HP Tuners Business").

15.     HPT has expended significant time, money, and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs, and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

16.     HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

17.     In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured, and maintained an extensive network of vendors, resellers, and customers, to which HPT provides its products and offerings.  HPT's network of vendors, resellers, and customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

18.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, resellers, and customers.

19.     HPT prides itself in catering to the needs of its vendors, resellers, and customers and in providing authorized, authentic, and functional products and offerings, and the most competitive pricing in the industry.

20.     HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers, and customers' needs and requests.

21.     HPT is constantly working to develop its products, source code, and offerings, and has devoted substantial time, money, and resources to protect its confidential and proprietary information and to avoid efforts by third parties to pirate HPT's products and offerings.

22.     As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers, and customers.

23.     HPT's confidential and proprietary software, source code, license-key generator, and offerings have been developed and extensively refined by HPT at a

4

substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

24.     HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources.  HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

25.     Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information.  HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

a)     HPT protects access to its Confidential Information through computer passwords;

b)     HPT protects to its Confidential Information through hard-drive encryption on all employee's computers;

c)     HPT protects access to its Confidential Information through sophisticated firewalls;

d)     HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

e)     HPT limits the number of employees having access to its Confidential Information.

f)     Employees are given access to HPT's Confidential Information on a "need-

5

to-know" basis;

g)      HPT does not give access to its Confidential Information to non-employees;

h)      HPT employees are forbidden from copying, transferring, or otherwise duplicating any of HPT's Confidential Information; and

i)      HPT requires each employee to return to HPT all Confidential Information when the employee leaves HPT's employ.

26.     Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software, and offerings, including, but not limited to, entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software, and offerings.

27.     Upon information and belief, given Defendants' use and access to HPT's proprietary software, Defendants entered into an End User License Agreement ("EULA"). (A copy of the EULA is attached hereto as Exhibit A).

28.     HPT's EULA provides, in pertinent part:

3.      **Limitations and Obligations**

a.      **Restrictions on Use**.  Licensee shall not:

(i)      make the Licensed System or accompanying materials available to, or use the Licensed System for the benefit of, anyone other than Licensee except expressly permitted in this EULA;

(ii)     market, sell, distribute, sublicense, use, modify, translate, reproduce, create derivative works from, dispose of, rent, lease, or authorize or permit access or use of any portion of the Licensed System, except as expressly permitted in this EULA, without the expressed written consent of HP Tuners LLC;

(iii)　　reverse engineer, decompile, or disassemble the Licensed System, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation;

(iv)　　interfere with or disrupt the integrity or performance of the Licensed System;

(v)　　copy the Licensed System or any part, feature, function thereof;

(vi)　　export or use the Licensed System in violation of U.S. law, including Department of Commerce export administration regulations;

(vii)　　remove any copyright and other proprietary notices contained in the Licensed System;

(viii)　　use the Licensed System in a manner which infringes or violates any of the intellectual property, proprietary, or other rights of HP Tuners LLC or any third party;

(ix)　　distribute or transfer the installer of the Licensed System, any files installed by the installer of the Licensed System, or any files contained within the installer of the Licensed System; or

(x)　　access and use the Licensed System in any manner that is inconsistent with the terms of this EULA.

b.　　**Additional Obligations.**

(i)　　Licensee shall comply in full with all federal, state, local and foreign laws, rules and regulations in connection with its access to, and use of, the Licensed System.

(ii)　　The Licensed System may be accessed and used only in a form and manner approved by HP Tuners LLC in its sole discretion, and only in accordance with the terms and conditions of this EULA.

(iii)　　Licensee shall not remove HP Tuners LLC's copyright notices and other proprietary notices on the Licensed System, and all copies thereof shall be subject to all terms, conditions, and obligations of this EULA.

(*See* <u>Exhibit A</u>).

7

29.     On February 9, 2017, an email from the sender JOHN DOE 4 advertised the availability of a hacked HPT cable with multiple tuning credits.

30.     On June 24, 2017, the username "████████" on mhhauto.com posted publicly, for the first time, with intent to help generate licenses for HPT software, stating "I can help you with credits for cheap."

31.     On June 28, 2017, on the HPT forum, "ecumaster" advertised "Hacked Credits" for HPT's VCM Suite software.  The post stated: "No Dramas or Hassles cheap credits.  Only $25aud each, 8 for $100aud or 20 for $200aud. ████████████████████████ Cheers."

32.     On July 6, 2017, on the HPT forum of mhhauto.com, the username "████████████" advertised "cracked" software and licenses.  The post stated as follows:

> Cracked 2.24
>
> So we have successfully cracked and patched HPTuner VCM software to never ask for licenses.  You can read, write and edit/save most all 1998-2014 GM cars and some early Ford to about 2010 and Dodge stuff they supported.  Email ██████████████████████ if you are interested in this version.  The 3.4 and 3.5 has [sic] been patched already and is [sic] in testing and then we will crack 3.6 and remove the call back to the server.
>
> You can read, save, edit and flash any supported files without EVER being asked to license.  You can use your existing cable or a brand new one and new [sic] use another credit again.
>
> Cheers

33.     The significance of the "cracked" software advertised by ███████ and ███████ is that it allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

34.     HPT did not authorize ███████, ███████, or any others to modify HPT's software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

35.     On July 6, 2017, HPT contacted JOHN DOE 2, via alias Peter Brodski, and purchased four (4) discounted Dodge credits.

36.     HPT received the credits and verified that it correctly generates the license keys.

37.     On July 14, 2017, JOHN DOE 2 emailed select HPT employees (including an employee whose association with HPT is not publicly known to anyone besides this employee's family, current HPT employees, and former HPT employees), sending a link to a "cracked" version of HPT's VCM Suite Software version 3.4.  The email contained a link to HPT's "cracked" proprietary source code and decryption key. The email contended that JOHN DOE 2 had "patched" versions 3.5 and 3.6 of HPT's VCM Suite Software as well.

38.     On August 21, 2017, JOHN DOE 2 emailed select HPT employees demanding a public apology from HPT.

39.     Specifically, on August 21, 2017 at 1:05 p.m., various HPT personnel received an email from JOHN DOE 2 demanding a public apology from HPT and threatening the public release of a cracked version of HPT's VCM Suite Software 3.6, its newest release.  The email containing the extortion threat stated:

>     Still waiting for the apology for fucking everyone when you shut down the
>     open source.  Here is a fully cracked 3.6 with no licensing required EVER.
>     Don't make me release this.  You have until the end of the week.

40.     The email contained a link to HPT's "cracked" proprietary source code and decryption key.  As stated above, JOHN DOE 2 was previously selling discounted credits to third parties, which credits have been unlawfully generated using HPT's software.

41.     On February 27, 2018, on the mhhauto.com HPT forum, the username "▉▉▉▉▉▉" advertised the sale of "HPT version 3.0.119 that requires no credits."

42.     The "cracked" version of the software was sold JOHN DOE 1, and after payment was made to the PayPal account of JOHN DOE 1, the "cracked" version of the software was provided to "▉▉▉▉."

43.     A fundamental component of HPT's business is the sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles.

44.     Only HPT is authorized to generate authentic application keys for use with HPT's products, and HPT credits are generally sold for approximately $50.00 USD.

45.     However, Defendants have misappropriated HPT's trade secrets and proprietary information and have knowingly generated, created, used, and/or obtained fraudulent application keys that were not generated by HPT.

46.     Upon information and belief, Defendants used the email to unlawfully market and sell thousands of discounted HPT credits.

47.     In connection with this scheme, Defendants, themselves and through others, sold such fraudulent application keys.

48.     Defendants, acting in concert with others, have wrongfully acquired and possess an HPT license generator tool, which they have used to generate and sell licenses publicly that have been passed off as genuine and authentic products and offerings of HPT.

49.     Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT.

50.     Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

51.     Defendants, acting in concert with others, have attempted to mask their identities by using fake persona and using spoofed internet protocols.

52.     Defendants, acting in concert with others, have publicly posted confidential and proprietary information of HPT, including screenshots of HPT's parameter lists, which were stolen and which Defendants incorporated into their own software.

53.     Defendants, acting in concert with others, have also attempted to sell a cloned HPT interface with hacked credits on Facebook for their own profit as well as to cause harm to HPT.

54.     Defendants' generation and/or use of fraudulent application keys to obtain credits without purchasing them from HPT constitutes a violation of the terms and provisions of the EULA, otherwise infringes upon HPT intellectual property rights, and constitutes a misappropriation of HPT's confidential and proprietary information.

55.     Defendants have knowingly and wrongfully acquired, possess, and are using fraudulent application keys to generate licenses, tune vehicles, and generate revenues for their own benefit or the benefit of others.

56.     Defendants' misconduct includes adding extra licenses to existing interfaces using fraudulent application keys, which were not generated by HPT.

## COUNT I

## VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §1201(a)(1)(A)

57.     HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

58.     Defendants' actions constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work in violation of 17 U.S.C. §1201(a)(1)(A).

59.     Defendants, through their engagement of and encouragement of each other's actions, are aiding and abetting or inducing violations of 17 U.S.C. §1201(a)(1)(A).

60.     Defendants, through their actions, circumvented HPT's technological measures to access HPT's software, systems and Confidential Information in an unauthorized manner by bypassing HPT's usage restrictions.

61.     Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization or consent of HPT.

62.     Defendants' conduct has caused damage to HPT and has unjustly enriched Defendants, in an amount to be proven at trial.

63.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

64.     If Defendants are permitted to continue their conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such

12

irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT II

## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030

65.     HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

66.     Defendants, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT.

67.     Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

68.     HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

69.     Moreover, in doing so, Defendants intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

70.     Through its fraudulent activity, Defendants have generated profits and obtained revenues that otherwise would have gone to HPT.

71.     Defendants' activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. §1030(a)(4).

72.     Plaintiff, HPT, may maintain a civil action against Defendants for violations of the CFAA pursuant to 18 U.S.C. §1030(g).

73.     HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

74.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

75.     If Defendants are permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT III

## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, ET. SEQ.

76.     HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

77.     HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

78.     Without authorization by HPT, upon information and belief, a third party (who was a former employee of HPT) provided Defendants with copies of and access to confidential and proprietary information of HPT, including its confidential and proprietary source code.

79.     The confidential and proprietary source code wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to modify

HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

80.     HPT's confidential and proprietary source code has never been accessible to the public.

81.     HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

82.     HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

83.     In violation of law, Defendants have misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

84.     Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT.

85.     Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

86.     Furthermore, Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software.

87.     Likewise, Defendants have misappropriated HPT's confidential and proprietary information by attempting to sell a cloned HPT interface with hacked credits on the internet.

88.     Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

89.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

90.     If Defendants are permitted to continue its conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT IV

### UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ.

91.     HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

92.     Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

93.     Specifically, Defendants' deceives the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

94. Defendants' misconduct, as described hereinabove, affects the public interest.

95. HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

96. But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

**COUNT V**

**<u>BREACH OF CONTRACT</u>**

97. HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

98. In connection with Defendants' use of HPT's software, Defendants entered into the EULA with HPT.

99. The EULA is a valid and enforceable contract.

100. HPT fully performed its obligations under the EULA. (*See* <u>Exhibit A</u>).

101. By virtue of Defendants' misconduct as set forth hereinabove, Defendants have breached their obligations under the EULA.

102. Defendants' misconduct constitutes a material breach of the EULA.

103. As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss, and damages in an amount to be proven at trial.

## COUNT VI

## TORTIOUS INTEFERENCE WITH PROSPECTIVE

## CONTRACTUAL OR ECONOMIC RELATIONS

104.    HPT repeats and realleges ¶¶ 1 through 56 of the Complaint as if fully set forth herein.

105.    HPT has maintained valid business relationships with many vendors, resellers, and customers.

106.    HPT has a reasonable expectation that the relationships with its vendors, resellers and customers will continue and will not be disrupted by Defendants' conduct.

107.    Defendants' knew of HPT's relationships and expectations, but intentionally, wrongfully, and unjustifiably interfered with those relationships.

108.    Specifically, Defendants have solicited vendors, customers and suppliers of HPT to purchase hacked license keys and versions of software with licensing defeated from Defendants, have sold hacked license keys and versions of software with licensing defeated to third parties, and have interfered with HPT's relationships with its vendors, resellers, and customers.

109.    As a result of Defendants' actions, HPT has suffered irreparable harm for which it has no adequate remedy at law.  Unless enjoined, Defendants' will continue to harm HPT's business, causing further irreparable harm to HPT.

110.    As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** HPT respectfully prays for judgment against Defendants and in favor of HP Tuners, LLC as follows:

1.  Awarding and ordering an accounting and disgorgement of all Defendants' profits and/or damages suffered by Plaintiff due to Defendants' misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

    a.  the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A);

    b.  the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

    c.  the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq.; and

    d.  the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

2.  Awarding Plaintiff exemplary damages as authorized by statute for Defendants' willful misappropriation.

3.  Enjoining Defendants from using misappropriated trade secrets pursuant to statute.

4.  Entry of a declaratory judgment that Defendants' conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

5.  Enjoining Defendants from accessing HPT's Protected Computers.

6.  Awarding such other and further relief as may be just and proper caused by Defendants' violation of the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A) and the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

7.  Awarding HPT compensatory damages, in an amount to be proven at trial.

8.  Awarding pre- and post-judgment interest to HPT.

9.     Awarding HPT a preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

  a.  Passing off any of their products or services as those of HPT;

  b.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, products or services;

  c.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with HPT or any of HPT products or services; and

  d.  Unfairly competing with HPT in any manner.

10.    An award of damages in an amount to be proven at trial based on Defendants' unfair competition.

11.    An award of damages in an amount to be proven at trial based on Defendants' breach of contract.

12.    An award of damages in an amount to be proven at trial based on Defendants' tortious interference with HPT's prospective contractual or economic relations.

13.    An order that Defendants be required to file with the Court and to serve upon HPT counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

14.    An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute.

15.    An award of such other and further relief as the Court deems just and proper.

Dated this 6th day of July, 2018  RESPECTFULLY SUBMITTED,

**HP TUNERS, LLC**

By:  /s/ Kal Shah
   Kal K. Shah
   Trevor J. Illes
   BENESCH FRIEDLANDER, COPLAN &
   ARONOFF, LLP
   333 West Wacker Drive
   Suite 1900
   Chicago, IL 60606
   P: 312.212.4949
   F: 312.767.9192
   kshah@beneschlaw.com
   tilles@beneschlaw.com

# Exhibit "A"

# HP TUNERS LLC
# END-USER LICENSE AGREEMENT (EULA)

## NOTICE -- READ THESE TERMS AND
## CONDITIONS CAREFULLY BEFORE ACCEPTING

CLICKING "ACCEPT" (OR OTHERWISE USING THE LICENSED SYSTEM) INDICATES YOUR ACCEPTANCE OF THESE TERMS AND CONDITIONS.  IF YOU DO NOT AGREE WITH THE TERMS AND CONDITIONS OF THIS EULA, DO NOT CLICK "ACCEPT" OR INSTALL, COPY, OR USE THE LICENSED SYSTEM IN ANY MANNER.

This is a legal agreement between each user that accepts this EULA (either an individual or entity) (each, a "Licensee") and HP Tuners LLC.  HP Tuners LLC owns the product accompanying this EULA, and all associated or incorporated hardware and software including, without limitation, all media, printed materials, and "online" or electronic documentation, as well as all upgrades, updates, and new versions associated therewith (collectively, the "Licensed System").  HP Tuners LLC provides to Licensees the right to download, access, and use the Licensed System pursuant to the terms of this EULA.  For purposes of this EULA, the term "Affiliate" means a person or entity controlling, controlled by, or under common control with a stated party.

### RECITALS:

A.      The Licensed System is available through HP Tuners LLC directly or through a network of approved distributors.  The right to access and use the Licensed System is subject to acceptance of this EULA by a Licensee and the terms and conditions set forth herein.

B.      The Licensed System is protected by applicable federal, state, local and foreign laws, rules, regulations and treaties, including, without limitation, United States and foreign copyright laws and international copyright treaties, as well as other intellectual property laws and treaties.

        **NOW**, **THEREFORE**, in exchange for the mutual promises set forth in this EULA, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      **Grant of License.**  Provided that Licensee accepts this EULA and complies with all terms and conditions of this EULA, HP Tuners LLC hereby grants Licensee a limited, non-exclusive, non-transferable, non-assignable, revocable license for Licensee to access and use the Licensed System or any portion thereof pursuant to this EULA for Licensee's personal use or internal business purposes only.

2.      **Term and Termination**

   a.      **Term.**  This EULA shall remain in effect unless the EULA is earlier terminated as permitted under this EULA (the "Term").

   b.      **Termination.**  Without prejudice to any other rights, HP Tuners LLC may terminate this EULA, in whole or in part immediately if Licensee fails to comply with the any of the terms and conditions of this EULA. Without limiting the generality of the foregoing, Licensee agrees that HP Tuners LLC has the right to terminate this EULA and Licensee's right to access and use the Licensed System immediately if HP Tuners LLC suspects, in its sole discretion, that Licensee's use of the Licensed System or the Licensed System that Licensee is using violates the intellectual property or proprietary rights of HP Tuners LLC or any third party. Upon such termination, Licensee must immediately cease use of the Licensed System and provide all copies of the Licensed System to HP Tuners LLC.

   c.      **Effect of Termination.**  In the event of any termination of this EULA, the license granted hereunder shall terminate and Licensee shall immediately cease accessing and using the Licensed System.  In such event, Licensee shall return to HP Tuners LLC, or destroy, all copies of the Licensed System (and all of its component parts). Termination of this EULA shall be without prejudice to any other right or remedy to which HP Tuners LLC may be entitled under this EULA or applicable law.  Termination of this EULA shall not relieve Licensee from its obligations arising hereunder before termination of this EULA or which survive termination of this EULA.

3.      **Limitations and Obligations**

a.      **Restrictions on Use.**  Licensee shall not:

(i)      make the Licensed System or accompanying materials available to, or use the Licensed System for the benefit of, anyone other than Licensee except expressly permitted in this EULA;

(ii)      market, sell, distribute, sublicense, use, modify, translate, reproduce, create derivative works from, dispose of, rent, lease, or authorize or permit access or use of any portion of the Licensed System, except as expressly permitted in this EULA, without the expressed written consent of HP Tuners LLC;

(iii)      reverse engineer, decompile, or disassemble the Licensed System, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation;

(iv)      interfere with or disrupt the integrity or performance of the Licensed System;

(v)      copy the Licensed System or any part, feature, function thereof;

(vi)      export or use the Licensed System in violation of U.S. law, including Department of Commerce export administration regulations;

(vii)      remove any copyright and other proprietary notices contained in the Licensed System;

(viii)      use the Licensed System in a manner which infringes or violates any of the intellectual property, proprietary, or other rights of HP Tuners LLC or any third party;

(ix)      distribute or transfer the installer of the Licensed System, any files installed by the installer of the Licensed System, or any files contained within the installer of the Licensed System; or

(x)      access and use the Licensed System in any manner that is inconsistent with the terms of this EULA.

b.      **Additional Obligations.**

(i)      Licensee shall comply in full with all federal, state, local and foreign laws, rules and regulations in connection with its access to, and use of, the Licensed System.

(ii)      The Licensed System may be accessed and used only in a form and manner approved by HP Tuners LLC in its sole discretion, and only in accordance with the terms and conditions of this EULA.

(iii)      Licensee shall not remove HP Tuners LLC's copyright notices and other proprietary notices on the Licensed System, and all copies thereof shall be subject to all terms, conditions, and obligations of this EULA.

4.      **Notice of Defects; Exclusive Remedy.**  Licensee agrees to accept delivery of the Licensed System upon opening the packaging or downloading or otherwise accessing the Licensed System unless it does not conform to the description herein or is materially defective. Claims for rejected material on account of errors, shortages, or defective material in order to be considered by HP Tuners LLC, must be made in writing by Licensee to HP Tuners LLC within five (5) days after delivery of Licensed System. All Licensed Systems delivered shall be conclusively deemed accepted and conforming unless rejection is made or notice of nonconformity is given in writing within such five (5) day period. If Licensed System appears defective, Licensee shall discontinue its use and notify HP Tuners LLC promptly so that HP Tuners LLC may investigate. As HP Tuners LLC's sole liability and Licensee's sole remedy and subject to Section 6 below, to the exclusion of all other remedies in contract, tort, or otherwise, for any failure or defect of the Licensed System, HP Tuners LLC will use commercially reasonable efforts to repair or replace any defective or malfunctioning Licensed System at no charge or if HP Tuners LLC, in its sole discretion, deems repair or replacement of the Licensed System to be commercially unreasonable, HP Tuners LLC may terminate this EULA.

5.      **DISCLAIMER. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS EULA, ACCESS TO AND USE OF THE LICENSED SYSTEM IS PROVIDED "AS IS", "WITH ALL FAULTS", AND ANY USE OF THE LICENSED SYSTEM IS LICENSEE'S OWN RISK. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS**

10595720 v1

EULA, NO WARRANTY OR CONDITION, EXPRESS OR IMPLIED, IS MADE WITH RESPECT TO THE LICENSED SYSTEM, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, QUIET ENJOYMENT, QUIET POSSESSION, CORRESPONDENCE TO DESCRIPTION, OR NON-INFRINGEMENT. THE ENTIRE RISK ARISING OUT OF USE OR PERFORMANCE OF THE LICENSED SYSTEM REMAINS WITH LICENSEE. Please note that some jurisdictions may not allow the above exclusion of implied warranties, so some of the above exclusions may not apply to Licensee.

6.      **LIABILITY CAP AND LIMITATION OF LIABILITY**

        **a.**      **LIABILITY CAP. LICENSEE'S SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO ANY BREACH OF THIS EULA BY HP TUNERS LLC OR ANY DISSATISFACTION BY LICENSEE WITH RESPECT TO THE LICENSED SYSTEM IS TO DISCONTINUE OPERATING, ACCESSING AND USING THE LICENSED SYSTEM. IN NO EVENT SHALL HP TUNERS LLC'S TOTAL LIABILITY ARISING IN CONNECTION WITH OR UNDER THIS EULA (WHETHER UNDER THE THEORIES OF BREACH OF CONTRACT, TORT, MISREPRESENTATION, FRAUD, WARRANTY, NEGLIGENCE, STRICT LIABILITY OR ANY OTHER THEORY OF LAW) EXCEED THE TOTAL FEES ACTUALLY PAID TO HP TUNERS LLC OR ITS AUTHORIZED DISTRIBUTER BY LICENSEE FOR THE LICENSED SYSTEM. THE FOREGOING LIMITATIONS, EXCLUSIONS AND DISCLAIMERS SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EVEN IF ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE.**

        **b.**      **LIMITATION OF LIABILITY. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS EULA, NEITHER HP TUNERS LLC NOR ANY OF ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES SHALL BE, UNDER ANY CIRCUMSTANCES, LIABLE TO LICENSEE OR ANY OTHER PERSON, FIRM OR ENTITY (WHETHER IN AN ACTION ARISING FROM CONTRACT, TORT OR OTHER LEGAL THEORY) FOR ANY COMPUTER DAMAGE, VEHICLE DAMAGE, PERSONAL INJURY, DEATH, FINES, LAWSUITS, PROSECUTION, LOST PROFITS, LOST DATA, INCORRECT DATA, ENVIRONMENTAL DAMAGE, GOVERNMENTAL, LAW AND REGULATORY VIOLATIONS OR ANY OTHER SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR OTHER DAMAGES RESULTING FROM THE ACCESS, USE, OR, FAILURE OF THE LICENSED SYSTEM, OR OTHERWISE, HOWEVER CAUSED, INCLUDING, WITHOUT LIMITATION, DAMAGES ARISING FROM (I) INFORMATION OR DATA OBTAINED FROM OR THROUGH THE LICENSED SYSTEM, (II) RELIANCE BY ANY PERSON ON INFORMATION OR DATA OBTAINED FROM OR THROUGH THE LICENSED SYSTEM, (III) VIRUS TRANSMISSION, (IV) DELETION OR LOSS OF DATA OR INFORMATION OF ANY KIND, OR (V) LIABILITY TO THIRD PARTIES.**

        **c.**      **THE LICENSED SYSTEM IS NOT INTENDED FOR USE IN OPERATION OF MOTOR VEHICLES AND/OR MACHINES WHERE THE USE, FAILURE OR MISUSE OF THE SOFTWARE COULD LEAD TO DEATH, PERSONAL INJURY OR PHYSICAL OR ENVIRONMENTAL DAMAGE AND OR VIOLATE ANY ENVIRONMENTAL, SAFETY, TRANSPORTATION OR OTHER LAWS OR REGULATIONS.**

        **d.**      **THE LICENSED SYSTEM IS NOT INTENDED TO BE USED AS A DEFEAT DEVICE OF ANY DIAGNOSTIC SYSTEM OR CONTROL SYSTEM. IT IS THE USER'S RESPONSIBILITY TO OBTAIN ANY CERTIFICATION, RECERTIFICATION, OR NEW CLASSIFICATIONS PERTAINING TO USE.**

        **e.**      Some jurisdictions do not allow the above limitation of incidental or consequential damages, so some of the above limitations may not apply to Licensee.

7.      **Misuse by Licensee.** Notwithstanding anything to the contrary contained in this EULA, Licensee shall not be entitled to any remedy under this EULA or otherwise, and HP TUNERS LLC shall have no liability whatsoever, if any defect deficiency, error or problem with the Licensed System arises from or results from violation of this EULA by Licensee or any employee, agent, volunteer, contractor, Affiliate, representative, successor or assign of Licensee, or from accident, abuse, misapplication, abnormal or unauthorized installation, operation, access or use of the Licensed System by Licensee or any employee, agent, contractor, representative, successor or assign of Licensee.

8.      **Intellectual Property Ownership.**

10595720 v1

a. **General.** The Licensed System and all HP Tuners LLC Intellectual Property (as defined below) is the intellectual property of, and is owned by, HP Tuners LLC and/or its suppliers. The structure, design, and organization of the Licensed System are the exclusive property, valuable trade secrets and confidential information of HP Tuners LLC and/or its suppliers and all right, title, interest, and ownership in and to the Licensed System and HP Tuners LLC Intellectual Property shall at all times remain with HP Tuners LLC and/or its suppliers. Except as expressly stated herein, this EULA does not grant Licensee any intellectual property rights in the Licensed System, or any component or element thereof. In connection with the license of the Licensed System by HP Tuners LLC to Licensee hereunder, the parties acknowledge and agree that HP Tuners LLC is expressly not selling to Licensee, and Licensee is not acquiring any right, title or interest in or to, any patents, copyrights, trade secrets, trademarks, service marks, trade names, or the company name of HP Tuners LLC, (collectively, "HP Tuners LLC Intellectual Property") but that Licensee will be granted only a non-exclusive, non-transferable, non-assignable, non-sublicensable, royalty free, revocable license by HP Tuners LLC to use the HP Tuners LLC Intellectual Property provided with the Licensed System in the form provided by HP Tuners LLC solely for Licensee's authorized use of the Licensed System. Licensee will use such Licensed System and the associated HP Tuners LLC Intellectual Property strictly in accordance with HP Tuners LLC's standards, policies and procedures as specified by HP Tuners LLC from time to time. Licensee acknowledges and agrees that its user license is a named-user license and personal to Licensee and may not be shared with any other individual or entity. HP Tuners LLC and/or its suppliers reserves and retains all rights in and to the Licensed System and HP Tuners LLC Intellectual Property (including, without limitation, all software code incorporated therein) not expressly granted to Licensee in this EULA. Notwithstanding anything contained in this EULA to the contrary, HP Tuners LLC reserves the right to make available, distribute or release the Licensed System under different license terms or to stop distributing, making available or releasing the Licensed System at any time.

b. **Marks.** Licensee shall ensure that it utilizes the trademarks, service marks, trade names, or the company name of HP Tuners LLC (collectively, "Marks") and all other HP Tuners LLC Intellectual Property in a manner which complies with the intellectual property rights of HP Tuners LLC and/or its Affiliates and this EULA. Licensee agrees to comply with all federal, state, local and foreign laws, rules, regulations and treaties, pertaining to the proper use and designation of marks in any country where the Marks could be in commerce. Licensee also agrees not to use the Marks as any trade name, corporate name, or Internet domain name, or to use the Marks in conjunction with any other marks without the prior written approval of HP Tuners LLC. Licensee agrees that HP Tuners LLC is the exclusive owner of the Marks and all the goodwill associated therewith, and all other content (including, without limitation all logos, graphics, colors, color combinations, works of authorship, audio works, visual works, and other content and materials) provided to Licensee. HP Tuners LLC shall retain all right, title and interest in and to the Marks, the goodwill associated therewith, and all registrations granted thereon. Any and all uses of the Marks by Licensee shall inure to the benefit of HP Tuners LLC. Licensee shall have no rights to the Marks or any confusingly similar variation thereof. Licensee acknowledges the validity of the Marks. Licensee acknowledges that it is estopped and that it will forebear from taking any action to challenge the validity or enforceability of the Marks. Any and all rights not expressly granted to Licensee under this EULA are hereby reserved to and retained by HP Tuners LLC. During the term of this EULA and thereafter, Licensee agrees that it will not in any way impair HP Tuners LLC's rights in the Marks, or any confusingly similar marks, or its right to use thereof or the goodwill of the business connected with such use and symbolized by the Marks. Licensee will cooperate fully and in good faith with HP Tuners LLC, at HP Tuners LLC's expense, for the purpose of securing and preserving HP Tuners LLC's rights including rights in the Marks and rights in any dispute, and agrees to give HP Tuners LLC prompt notice of any known or suspected infringements of the Marks, and cooperate with the efforts of HP Tuners LLC to police the Marks.

c. **Copyright.** Without limiting the generality of other terms set forth in this EULA, all title and copyrights in and to the Licensed System (including but not limited to any images, photographs, animations, video, audio, music, text, and "applets" incorporated into the Licensed System), the accompanying printed materials, and any copies of the Licensed System are owned by HP Tuners LLC or its suppliers. The Licensed System is protected by copyright laws and international treaty provisions. Therefore, Licensee must treat the Licensed System like any other copyrighted material. Licensee may not copy the printed materials, if any, accompanying the Licensed System. Licensee may not remove any copyright or other proprietary notice contained in the Licensed System or copy thereof.

d. **Licensee Obligations. Licensee agrees to notify HP Tuners LLC immediately of any pirating, infringement or imitation of the Licensed System, intellectual property rights of HP Tuners LLC, or Marks of HP Tuners LLC which comes to the attention of Licensee during the Term.**

10595720 v1

9.      **Indemnity.**  Licensee shall indemnify, defend, and hold harmless HP Tuners LLC and its Affiliates, employees, agents, officers, directors, shareholders, representatives, successors and assigns from and against any loss, liability, cause of action, cost or expense (including reasonable attorneys' fees) arising from, arising in connection with or related to:  (i) the material breach of this EULA by Licensee; (ii) the acts and omissions of Licensee and its Affiliates, employees, agents and representatives (individually, a "Licensee Affiliated Party" and collectively, the "Licensee Affiliated Parties") in connection with access to and use of the Licensed System; (iii) the violation, infringement or misappropriation by Licensee or any Licensee Affiliated Party, of the intellectual property, proprietary or other rights of HP Tuners LLC or any third party.   HP Tuners LLC may participate, through its attorneys or otherwise, in the investigation, trial, and defense of such claim and any appeal.  In such case, Licensee will reasonably cooperate with HP Tuners LLC's attorneys.

10.      **Additional Software**.  Any software which updates or supplements the original software included within the Licensed System is part of the Licensed System and is governed by this EULA unless other terms of use are provided with such updates or supplements, whereupon such other terms of use shall apply.  Any software provided along with the Licensed System that is associated with a separate end-user license or other agreement is licensed to Licensee under the terms of that separate agreement.

11.      **Information Collection**.  Licensee agrees that the Licensed System may collect certain information related to Licensee's use of the Licensed System and report such information to HP Tuners LLC. Information collected by the Licensed System includes, but is not limited to: details of Licensee's use of the Licensed System; information related the computer, system, and hardware the Licensed System is being stored, accessed, or used; and information related to the licensing of the Licensed System.

12.      **Export Rules.**  Licensee agrees that access to and use of the Licensed System will not be provided by Licensee or any employee or agent of Licensee to any citizen of a country to which access or use thereof is barred, or to which exports or shipments are barred, by the United States government.  Further, the Licensed System will not be shipped, transferred or exported by Licensee or any employee or agent of Licensee into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations (collectively the "Export Laws"). In addition, if the Licensed System is identified as export controlled items under the Export Laws, Licensee represents and warrants that is not a citizen, or otherwise located within, an embargoed nation and that Licensee is not otherwise prohibited under the Export Laws from receiving access to or using the Licensed System. All rights to access and use the Licensed System are granted on condition that such rights are forfeited if Licensee fails to comply with the terms of this EULA.

13.      **Applicable Law.**  This EULA is governed, construed and enforced in accordance with the laws of the State of Illinois, without giving effect to any principles of conflicts of laws. Jurisdiction and venue for all actions arising under this EULA shall be in the federal and state courts located in the State of Illinois. No action, regardless of form, arising out of this EULA or the Licensed System may be brought by Licensee more than one year after the cause of action has arisen. **The United Nations Convention on Contracts for the International Sale of Goods shall not be applicable to this EULA.**

14.      **Entire Agreement.**   This EULA  is the entire agreement between a Licensee and HP Tuners LLC relating to the subject matter of this EULA and supersedes all prior or contemporaneous oral or written communications, proposals and representations with respect to the subject matter of this EULA.  No provisions in any purchase order, or in any other business forms employed by either party, will supersede the terms and conditions of this EULA.

15.      **Notices.**  Any notice regarding this EULA to be given to HP Tuners LLC shall be in writing and may be given by delivering the same to HP Tuners LLC, Attn: General Counsel, 701 Dartmouth Lane, Buffalo Grove, IL 60089.

16.      **Confidentiality.**  Licensee acknowledges that Licensee or a Licensee Affiliated Party may receive or become aware of confidential information and trade secrets of HP Tuners LLC ("Confidential Information").  Licensee agrees to maintain and protect, and cause all Licensee Affiliated Parties to maintain and protect, the confidentiality of all Confidential Information of which it becomes aware (whether or not identified or marked as confidential at the time of its disclosure) and not disclose any Confidential Information, except as required by law (for example, under a court order or subpoena), to any person, firm, or entity other than the Licensee Affiliated Parties who have a need to know such Confidential Information for purposes of the license granted to Licensee hereunder, and Licensee shall preserve and protect, and cause all Licensee Affiliated Parties to preserve and protect, the confidentiality of all Confidential Information of which it becomes aware using the same degree of care that it uses to protect its own trade secrets, but never less than reasonable care.  Further, Licensee shall not use or disclose, and shall cause all Licensee Affiliated Parties not to use or disclose, any Confidential Information for any purpose not permitted by this EULA. Licensee agrees to formulate and adopt appropriate safeguards in light of its own operating activities to ensure protection of the confidentiality of all Confidential Information of which it becomes aware. The restrictions on disclosure set forth above shall not apply when, and to the extent that, Confidential Information: (a) is part of the public domain through no action or failure to act by Licensee; (b) is made available to the general public by HP Tuners LLC or a third party who is lawfully in possession of such information, not as a result of any action or failure to act on the part of Licensee; (c) was previously known to Licensee free of any obligation to keep it confidential; (d) is subsequently disclosed to Licensee free of any obligation to keep it confidential; or (e) is independently developed by Licensee or a third party other than in breach of this EULA.  In addition, Licensee will not be

considered to have breached its obligations under this EULA to the extent Confidential Information is required to be disclosed by court order or order of a governmental authority or by applicable law, provided Licensee, unless prohibited by law, advises HP Tuners LLC in writing at least thirty (30) days prior to making such disclosure so that HP Tuners LLC may object to such disclosure, take action to ensure confidential treatment of the Confidential Information, or take such other action as it considers appropriate to protect the Confidential Information. Violations of this Section are likely to cause irreparable harm and therefore HP Tuners LLC may seek immediate injunctive relief without the need of posting bond in the event of a violation of this Section.

17.     **U.S. Government Restricted Rights**. The Licensed System (and associated documentation) is a "commercial" item provided with restricted rights.  Use, duplication, or disclosure by the United States Government is subject to restrictions as set forth in this EULA and at DFARS 227.7202-1(a) and 227.7202-3 (Rights in Commercial Computer Software or Computer Software Documentation), DFARs 252.227-7015 (Technical Data –Commercial Items), FAR 12.211 (Technical Data), FAR 12.212 (Software), FAR 52.227-19, or FAR 52.227-14 (ALT III), as applicable and as may be amended.  If a government agency has a need for rights not conveyed under these terms, it must negotiate with HP Tuners LLC to determine if there are acceptable terms for transferring such rights, and a mutually acceptable written addendum specifically conveying such rights must be included in any applicable agreement. Manufacturer is HP Tuners LLC, 701 Dartmouth Ln., Buffalo Grove, IL 60089.

18.     **Force Majeure.**  HP Tuners LLC shall not be responsible for delays or failure of performance resulting from acts beyond the reasonable control of HP Tuners LLC.  Such acts shall include, but not be limited to, acts of God, strikes, walkouts, riots, acts of war, epidemics, failure of suppliers to perform, governmental regulations, power failures, Internet or telecommunications failures, earthquakes, or other disasters.

19.     **Compliance with License and Laws.**  Licensee shall comply with, and all cause all Licensee Affiliated Parties to comply with, all federal, state, local and foreign laws, regulations, rules and ordinances pertaining to the license granted to Licensee under this EULA.  In the event that any part of this EULA is determined to violate any applicable federal, state, local or foreign laws, rules or regulations, then the remaining provisions of this license shall remain in full force and effect and shall be enforced to fullest extent permitted by law.

20.     **Survival.**  Sections 2c, and 4-22 shall survive the termination or expiration of the EULA for any reason.

21.     **Headings.**  The titles and headings of the various sections and paragraphs in this EULA are intended solely for reference and are not intended for any other purpose whatsoever or to explain, modify, or place any construction on any of the provisions of this EULA.  The opening two paragraphs and the Recitals to this EULA are incorporated herein.

22.     **Waiver/Assignment.**  A waiver of any provision of this EULA shall only be effective if in a writing signed by the party against which the waiver is claimed.  This EULA may not be assigned by Licensee without the prior written consent of HP Tuners LLC.  This EULA may be assigned by HP Tuners LLC, by operation of law or otherwise, without the consent or approval of Licensee or any other person, firm or entity.

        **BY CLICKING ON THE "ACCEPT" BUTTON BELOW OR OTHERWISE USING THE LICENSED SYSTEM, YOU INDICATE YOUR ACCEPTANCE OF THIS EULA.**

10595720 v1