**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) ) CASE NO. 1:18-cv-04670 |
| *Plaintiff*, | ) ) ) |
| vs. | ) ) ) |
| DEVIN JOHNSON | ) ) **Hon. John R. Blakey** |
| and | ) ) |
| JASON SINGLETON | ) ) |
| and | ) ) **FOURTH AMENDED COMPLAINT FOR** |
| VENGEANCE PCM LLC d/b/a VENGEANCE RACING | ) **INJUNCTIVE RELIEF AND DAMAGES** ) ) **JURY TRIAL DEMANDED** |
| and | ) ) |
| LPE ASSETS, LLC | ) ) |
| and | ) ) |
| JOHN DOE a/k/a ███████████████, JOHN DOE a/k/a ████████████, JOHN DOE a/k/a █████████████ and JOHN DOES 1-11, | ) ) ) ) ) ) |
| *Defendants*. | ) ) ) ) ) |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT"), by its attorneys, for its Fourth Amended Complaint for Injunctive Relief ("FAC") against Defendants Devin Johnson ("Johnson"), Jason Singleton ("Singleton"), Vengeance PCM LLC d/b/a

Vengeance Racing ("Vengeance"), LPE Assets, LLC ("LPE"), JOHN DOE 2 a/k/a ███████████████████████,[1] JOHN DOE 3 a/k/a ████████████████████, JOHN DOE 4 a/k/a ████████████████, and JOHN DOES 5–11 (collectively referred to herein as "Defendants"),[2] states as follows:

## <u>NATURE OF THE ACTION</u>

1.     At substantial expense, hard work, and ingenuity over the course of many years and thousands of man hours, HPT has developed complete, cost-effective tuning and data-acquisition solutions for automobile enthusiasts and professional shops.

2.     Over the years, HPT has carefully guarded its proprietary products and source code in order to protect its trade secrets, specifications, and software.

3.     Defendants wrongfully obtained and possess HPT's confidential and proprietary source code, and have misappropriated HPT's trade secrets and proprietary information.

4.     Defendants wrongfully obtained and possess HPT's confidential and proprietary information, and have misappropriated HPT's trade secrets and proprietary information by hacking HPT's software and/or hardware devices to generate, create, use, and/or sell fraudulent application keys that were not purchased from HPT.

5.     This is an action against Defendants for: (i) violation of the Digital Millennium Copyright Act ("DMCA") under 17 U.S.C. §1201(a)(1)(A); (ii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq*.; (iv) violation of the Illinois Trade Secrets Act,

---

[1] Plaintiff cannot be certain of the gender of the John Doe defendants, so, for purposes of simplicity, it will refer to them individually using the pronouns "he" or "him," and using the pronominal adjective "his."

[2] "JOHN DOES 1-11" probably include, but are not limited to, users of the IP addresses ██████████ ████████, and the phone number ████████.

2

765 ILCS 1065/1 *et seq*.; (v) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; (vi) breach of contract; and (vii) tortious interference with prospective economic relations.

## PARTIES

6.    HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.

7.    Devin Johnson, formerly identified in the original Complaint as JOHN DOE 1, is an individual who, upon information and belief, resides at 3033 Gateway Street, Apartment 109, Springfield, Oregon 97477, and is the user of the email address ███████████████.

8.    Jason Singleton, formerly identified in the original Complaint as one of the JOHN DOES 1–11, is an individual who, upon information and belief, resides at 3116 Davis Avenue, Granite City, Illinois 62040-5020, and is the user of the IP address ███████████.

9.    Vengeance PCM LLC d/b/a Vengeance Racing ("Vengeance"), formerly identified in the original Complaint as one of the JOHN DOES 1–11, is a limited liability company registered in Georgia which, upon information and belief, is located at 241 Castleberry Industrial Drive, Cummings, GA 30040, and is the user of the IP address ███████.

10.    LPE Assets, LLC ("LPE") formerly identified in the original Complaint as one of the JOHN DOES 1–11, is a limited liability company registered in Michigan which, upon information and belief, is located at 7819 Lochlin Drive, Brighton, MI 48116, and is the user of the IP address ██████.

11.    JOHN DOE 2, upon information and belief, is an unknown individual, entity, or person who does not reside in the State of Illinois.

12.     JOHN DOE 3, upon information and belief, is an unknown individual, entity, or person who does not reside in the State of Illinois.

13.     JOHN DOE 4, upon information and belief, is an unknown individual, entity, or person who does not reside in the State of Illinois.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction for the DMCA, CFAA, and DTSA claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction for the state-law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims asserted in this FAC occurred, and a substantial part of the property that is the subject of this action is situated, in this judicial district.

## BACKGROUND FACTS

### *HPT's Business*

16.     HPT is a niche business, which provides complete, cost-effective automotive tuning and data-acquisition solutions for enthusiasts and professional shops.

17.     HPT's business includes but is not limited to computer hardware and software, designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles, and watercraft) (the "HP Tuners Business").

18.     HPT has expended significant time, money, and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs, and

technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

19.     HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

20.     In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured, and maintained an extensive network of vendors, resellers, and customers, to which HPT provides its products and offerings. HPT's network of vendors, resellers, and customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

21.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, resellers, and customers.

22.     HPT prides itself in catering to the needs of its vendors, resellers, and customers and in providing authorized, authentic, and functional products and offerings, and the most competitive pricing in the industry.

23.     HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers, and customers' needs and requests.

24.     HPT is constantly working to develop its products, source code, and offerings, and has devoted substantial time, money, and resources to protect its confidential and proprietary information and to avoid efforts by third parties to pirate HPT's products and offerings.

25.     As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers, and customers.

### *HPT's Intellectual Property*

26.     HPT's confidential and proprietary software, source code, license-key generator, and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

27.     HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources.  HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

28.     Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information.  HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

> a)     HPT protects access to its Confidential Information through computer passwords;
>
> b)     HPT protects to its Confidential Information through hard-drive encryption on all employee's computers;
>
> c)     HPT protects access to its Confidential Information through sophisticated firewalls;
>
> d)     HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

e)      HPT limits the number of employees having access to its Confidential Information.

f)      Employees are given access to HPT's Confidential Information on a "need-to-know" basis;

g)      HPT does not give access to its Confidential Information to non-employees;

h)      HPT employees are forbidden from copying, transferring, or otherwise duplicating any of HPT's Confidential Information; and

i)      HPT requires each employee to return to HPT all Confidential Information when the employee leaves HPT's employ.

29.     Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software, and offerings, including, but not limited to, entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software, and offerings.

30.     Among other such measures, each of HPT's products, source code, software, and other offerings at issue was, and continues to be, protected and accompanied by  an End User License Agreement ("EULA").  (A copy of the EULA is attached hereto as Exhibit A).

31.     The EULA stated that "HP Tuners LLC owns the product accompanying this EULA, and all associated or incorporated hardware and software including, without limitation, all media, printed materials, and 'online' or electronic documentation, as well as all upgrades, updates, and new versions associated therewith (collectively, the 'Licensed System')."  (*See*

Exhibit A at 1).  The EULA also specified that the Licensee's right to download, access, and use the Licensed System was pursuant to the terms of the EULA.  *Id.*

32.    The EULA stated that "CLICKING "ACCEPT" (OR OTHERWISE USING THE LICENSED SYSTEM) INDICATES YOUR ACCEPTANCE OF THESE TERMS AND CONDITIONS," and instructed that the Licensed System should not be installed, copied, or used in any manner, and "ACCEPT" should not be clicked, if the terms and conditions of the EULA were not agreed to.  (*See* Exhibit A at 1).

33.    HPT's EULA provides, in pertinent part:

3.    **Limitations and Obligations**

a.    **Restrictions on Use**.   Licensee shall not:

(i)    make the Licensed System or accompanying materials available to, or use the Licensed System for the benefit of, anyone other than Licensee except expressly permitted in this EULA;

(ii)    market, sell, distribute, sublicense, use, modify, translate, reproduce, create derivative works from, dispose of, rent, lease, or authorize or permit access or use of any portion of the Licensed System, except as expressly permitted in this EULA, without the expressed written consent of HP Tuners LLC;

(iii)    reverse engineer, decompile, or disassemble the Licensed System, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation;

(iv)    interfere with or disrupt the integrity or performance of the Licensed System;

(v)    copy the Licensed System or any part, feature, function thereof;

(vi)    export or use the Licensed System in violation of U.S. law, including Department of Commerce export administration regulations;

(vii)    remove any copyright and other proprietary notices contained in the Licensed System;

(viii)   use the Licensed System in a manner which infringes or violates any of the intellectual property, proprietary, or other rights of HP Tuners LLC or any third party;

(ix)   distribute or transfer the installer of the Licensed System, any files installed by the installer of the Licensed System, or any files contained within the installer of the Licensed System; or

(x)   access and use the Licensed System in any manner that is inconsistent with the terms of this EULA.

b.   **Additional Obligations.**

(i)   Licensee shall comply in full with all federal, state, local and foreign laws, rules and regulations in connection with its access to, and use of, the Licensed System.

(ii)   The Licensed System may be accessed and used only in a form and manner approved by HP Tuners LLC in its sole discretion, and only in accordance with the terms and conditions of this EULA.

(iii)   Licensee shall not remove HP Tuners LLC's copyright notices and other proprietary notices on the Licensed System, and all copies thereof shall be subject to all terms, conditions, and obligations of this EULA.

(*See* Exhibit A, ¶ 3, *et seq.*).

34.   After setting forth HPT's intellectual property rights and the licensee's obligations and uses permitted thereunder, the EULA also provided an obligation, in ¶ 8.d, to notify HPT of any pirating, infringement, or imitation of the Licensed System and/or HPT's intellectual property: "Licensee Obligations. Licensee agrees to notify HP Tuners LLC immediately of any pirating, infringement or imitation of the Licensed System, intellectual property rights of HP Tuners LLC, or Marks of HP Tuners LLC which comes to the attention of Licensee during the Term."  (*See* Exhibit A, ¶ 8.d).

35.     The EULA further provided in ¶ 13 that it "is governed, construed and enforced in accordance with the laws of the State of Illinois, without giving effect to any principles of conflicts of laws.  Jurisdiction and venue for all actions arising under this EULA shall be in the federal and state courts located in the State of Illinois."  (*See* <u>Exhibit A</u>*, ¶ 8.d).*

### ***Defendants' Breach of the EULA and Violation of HPT's Intellectual Property Rights***

36.     Upon information and belief, given Defendants' use of and/or access to HPT's proprietary software, each of Defendants accepted the EULA, agreeing to its terms and conditions, including all of the obligations set forth therein and the consent to jurisdiction and venue in Illinois.

37.     On February 9, 2017, an email from the sender JOHN DOE 4 advertised the availability of a hacked HPT cable with multiple tuning credits.

38.     On June 24, 2017, the username ██████████ on mhhauto.com posted publicly, for the first time, with intent to help generate licenses for HPT software, stating "I can help you with credits for cheap."

39.     On June 28, 2017, on the HPT forum, ██████████ advertised "Hacked Credits" for HPT's VCM Suite software.  The post stated: "No Dramas or Hassles cheap credits.  Only $25aud each, 8 for $100aud or 20 for $200aud. ███████████████████ Cheers".

40.     On July 6, 2017, on the HPT forum of mhhauto.com, the username ████████████ advertised "cracked" software and licenses.  The post stated as follows:

> Cracked 2.24
>
> So we have successfully cracked and patched HPTuner VCM software to never ask for licenses.  You can read, write and edit/save most all 1998-2014 GM cars and some early Ford to about 2010 and Dodge stuff they supported.  Email ████████████████ if you are interested in this version.  The 3.4 and 3.5 has [sic] been patched already and is [sic] in testing and then we will crack 3.6 and remove the call back to the server.

You can read, save, edit and flash any supported files without EVER being asked to license. You can use your existing cable or a brand new one and new [sic] use another credit again.

Cheers

41. The significance of the "cracked" software advertised by █████████ and ████████ is that it allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT, in violation of the EULA and HPT's intellectual property rights.

42. Such modification constitutes a violation of HPT's intellectual property rights, and breaches numerous provisions of the EULA, including but not limited to its ¶¶ 3 & 8, *et seq.*, and ¶ 16,

43. HPT did not authorize ████████, ████████, or any others to modify HPT's software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

44. Numerous copies of "cracked" versions of HPT's software were created, sold or otherwise disseminated by Defendants, including JOHN DOE 2, but on information and belief also including at least one or more of DOES 4–11.

45. Creation and distribution of "cracked" versions of HPT's software violated the EULA, including but not limited to ¶¶ 3.a–b, 8, and 16.

46. On July 6, 2017, HPT contacted JOHN DOE 2 via alias Peter Brodski, and purchased four (4) discounted Dodge credits.

47. HPT received the credits and verified that it correctly generates the license keys.

48. On July 14, 2017, JOHN DOE 2 emailed select HPT employees (including an employee whose association with HPT is not publicly known to anyone besides this employee's family, current HPT employees, and former HPT employees), sending a link to a "cracked" version of HPT's VCM Suite Software version 3.4. The email contained a link to HPT's

"cracked" proprietary source code and decryption key. The email contended that JOHN DOE 2 had "patched" versions 3.5 and 3.6 of HPT's VCM Suite Software as well.

49.     On August 21, 2017, JOHN DOE 2 emailed select HPT employees demanding a public apology from HPT.

50.     Specifically, on August 21, 2017 at 1:05 p.m., various HPT personnel received an email from JOHN DOE 2 demanding a public apology from HPT and threatening the public release of a cracked version of HPT's VCM Suite Software 3.6, its newest release.  The email containing the extortion threat stated:

> Still waiting for the apology for fucking everyone when you shut down the open source.  Here is a fully cracked 3.6 with no licensing required EVER. Don't make me release this.  You have until the end of the week.

51.     The email contained a link to HPT's "cracked" proprietary source code and decryption key.  As stated above, JOHN DOE 2 was previously selling discounted credits to third parties, which credits had been unlawfully generated using HPT's software, in violation of HPT's intellectual property rights and in breach of the EULA.

52.     On February 27, 2018, on the mhhauto.com HPT forum, the username "███████" advertised the sale of "HPT version 3.0.119 that requires no credits."

53.     The "cracked" version of the software was sold by "KALISTO", and after payment was made to the PayPal account of Johnson, the "cracked" version of the software was provided to "██████".

54.     A fundamental component of HPT's business is the sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles.

55.     Only HPT is authorized to generate authentic application keys for use with HPT's products, and HPT credits are generally sold for approximately $50.00 USD.

56.     These copies of "cracked" versions of HPT's software were acquired and/or used by Defendants or those whose conduct is attributable to Defendants, including at least Defendants LPE, Vengeance, and Singleton, but on information and belief also including at least one more of DOES 4–11.

57.     The "cracked" versions of HPT's software bypassed the EULA and allowed misuse of HPT's software, trade secrets, and other proprietary and confidential information.

58.     HPT's customers had agreed to the EULA.  Their use of "cracked" versions of HPT's software by HPT's customers violated the EULA, including but not limited to §§ 3.a.(i)–(ii), (iv)–(vi), (viii), (x), and 3.b.(i)–(ii).

59.     Between January 13, 2018 and September 19, 2018, the IP address ███████ used a "cracked" version of HPT's software on at least seventy (70) occasions.

60.     The IP address ████████ was assigned to LPE during that period.

61.     LPE was a long-term customer of HPT's and had previously agreed to the EULA and was under the EULA at all relevant times.

62.     LPE's use of a "cracked" version of HPT's software constituted a violation of the terms and conditions of the EULA, and violated HPT's intellectual property rights.

63.     Between January 16, 2018 and June 22, 2018, the IP address ██████ used a "cracked" version of HPT's software on multiple occasions.

64.     The IP address ██████ was assigned to Vengeance during that period.

65.     Vengeance was a customer of HPT's, and had previously agreed to the EULA.

66.     Vengeance's use of a "cracked" version of HPT's software constituted a violation of the terms and conditions of the EULA, and violated HPT's intellectual property rights.

67.     On December 29, 2017, the IP address ██████████ used a "cracked" version of HPT's software.  On information and belief, that IP address also used a "cracked" version of HPT's software on one or more other occasions.

68.     The IP address ██████████ was assigned to Singleton at that time.

69.     On information and belief, Singleton had previously agreed to the EULA.

70.     Singleton's use of a "cracked" version of HPT's software constituted a violation of the terms and conditions of the EULA, and violated HPT's intellectual property rights.

71.     However, Defendants including at least Johnson, JOHN DOE 2, Singleton, LPE, and Vengeance, have misappropriated HPT's trade secrets and proprietary information and have knowingly generated, created, used, and/or obtained fraudulent application keys that were not generated by HPT and/or "cracked" versions of HPT's software that were not created by HPT and in violation of the EULA and HPT's intellectual property rights.

72.     Upon information and belief, Defendants, including at least Johnson and JOHN DOE 2, used email to unlawfully market and sell thousands of discounted HPT credits.

73.     In connection with this scheme, Defendants, including at least Johnson and JOHN DOE 2, themselves and through others, sold such fraudulent application keys.

74.     Defendants, including at least Johnson, JOHN DOE 2, Singleton, LPE, and Vengeance, acting in concert with others, have each wrongfully acquired and/or possess an unauthorized HPT license generator tool, which they have used to generate and/or sell licenses publicly that have been passed off as genuine and authentic products and offerings of HPT and/or wrongfully acquired and/or possess a "cracked" version of HPT's software that does not require any licenses.

75.     Defendants, including at least Johnson, JOHN DOE 2, and JOHN DOE 4, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute a "cracked" version for their own profit as well as to cause harm to HPT.

76.     Defendants, including at least Johnson, JOHN DOE 2, and JOHN DOE 4, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

77.     Defendants, including at least Johnson, JOHN DOE 2, and JOHN DOE 4, acting in concert with others, have attempted to mask their identities by using fake persona and using spoofed internet protocols.

78.     Defendants, including at least Johnson, JOHN DOE 2, and JOHN DOE 4, acting in concert with others, have publicly posted confidential and proprietary information of HPT, including screenshots of HPT's parameter lists, which were stolen and which Defendants incorporated into their own software.

79.     Defendants, including at least one or more of DOES 4–11, acting in concert with others, have also attempted to sell a cloned HPT interface with hacked credits on Facebook for their own profit as well as to cause harm to HPT.

80.     Defendants' generation and/or use of fraudulent application keys to obtain credits without purchasing them from HPT and/or generation and/or use of "cracked" versions that did not require credits, including at least by Johnson, JOHN DOE 2, LPE, Vengeance, and Singleton, constitutes a violation of the terms and provisions of the EULA, otherwise infringes upon HPT

intellectual property rights, and constitutes a misappropriation of HPT's confidential and proprietary information.

81.     Defendants, including at least Johnson, JOHN DOE 2, LPE, Vengeance, and Singleton, have knowingly and wrongfully acquired, possess, and are using fraudulent application keys to generate licenses, tune vehicles, and generate revenues for their own benefit or the benefit of others.

82.     Defendants' misconduct, including at least that by Johnson, JOHN DOE 2, LPE, Vengeance, and Singleton, includes adding extra licenses to existing interfaces using fraudulent application keys, which were not generated by HPT.

### COUNT I
### VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(a)(1)(A)

83.     HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

84.     Defendants' actions, including at least those by Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work in violation of 17 U.S.C. § 1201(a)(1)(A).

85.     Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, through their engagement of and encouragement of each other's actions, are aiding and abetting or inducing violations of 17 U.S.C. § 1201(a)(1)(A).

86.     Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, through their actions, circumvented HPT's technological measures to access HPT's software, systems and Confidential Information in an unauthorized manner by bypassing HPT's usage restrictions.

87.     Defendants' acts, including at least those by Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, constituting DMCA violations have been and continue to be performed without the permission, authorization or consent of HPT.

88.     Defendants' conduct, including at least that by including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, has caused damage to HPT and has unjustly enriched Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, in an amount to be proved at trial.

89.     As a direct and proximate result of Defendants' ongoing violations, including at least those by Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proved at trial.

90.     If Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, are permitted to continue their conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct, including that by including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, is enjoined during the pendency of this action and thereafter.

**COUNT II**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

91.     HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

92.     Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove

licensing restrictions from HPT's VCM Suite Software to use and/or distribute it for their own profit as well as to cause harm to HPT.

93.     HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

94.     Moreover, Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling and/or using a version of hacked software with licensing defeated.

95.     Moreover, in doing so, Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, and Vengeance intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

96.     Through their fraudulent activity, Defendants, including at least Johnson, JOHN DOE 2, JOHN DOE 4, LPE, Vengeance, and Singleton has generated profits and obtained revenues that otherwise would have gone to HPT, and/or diverted profits and revenues away from HPT.

97.     Defendants' activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. § 1030(a)(4).

98.     Plaintiff, HPT, may maintain a civil action against Defendants for violations of the CFAA pursuant to 18 U.S.C. § 1030(g).

99.     HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

100.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proved at trial.

101.     If Defendants are permitted to continue their conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proved at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT III
## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, ET. SEQ.

102.     HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

103.     HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

104.     Without authorization by HPT, upon information and belief, a third party (who was a former employee of HPT) provided one or more of Defendants with copies of and access to confidential and proprietary information of HPT, including its confidential and proprietary source code.

105.     The confidential and proprietary source code wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to modify HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling them to unlawfully use the software embodying HPT's confidential and proprietary information and source code on any vehicle they wish without paying any licensing fees to HPT.

19

106.    HPT's confidential and proprietary source code has never been accessible to the public.

107.    HPT has taken various measures, which include and exceed reasonable measures, to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

108.    HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

109.    In violation of law, Defendants have misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

110.    Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT.

111.    Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling and/or using a version of hacked software with licensing defeated.

112.    Furthermore, Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software.

113. Likewise, Defendants have misappropriated HPT's confidential and proprietary information by attempting to sell a cloned HPT interface with hacked credits on the internet and/or by attempting to sell a "cracked" version of HPT's software and/or by using same.

114. Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

115. As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proved at trial.

116. If Defendants are permitted to continue their conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proved at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

**COUNT IV**
**UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ.**

117. HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

118. Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

119. Specifically, Defendants, including but not limited to Johnson, JOHN DOE 2, and JOHN DOE 4, have deceived the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

120. Defendants' misconduct, as described hereinabove, affects the public interest.

121.    HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

122.    But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

## COUNT V
## BREACH OF CONTRACT

123.    HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

124.    In connection with Defendants' access to and/or use of HPT's software, each of Defendants entered into the EULA with HPT.

125.    Among other things, by entering into the EULA, each such Defendant, consented to venue and jurisdiction in the federal courts of the State of Illinois for actions arising out of its breach..  (*See* Exhibit A ¶ 13).

126.    The EULA is a valid and enforceable contract.

127.    HPT fully performed its obligations under the EULA. (*See* Exhibit A).

128.    By virtue of Defendants' misconduct as set forth hereinabove, Defendants have breached their obligations under the EULA.

129.    Defendants' misconduct constitutes a material breach of the EULA.

130.    As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss, and damages in an amount to be proved at trial.

## COUNT VI
## TORTIOUS INTEFERENCE WITH PROSPECTIVE
## CONTRACTUAL OR ECONOMIC RELATIONS

131.    HPT repeats and realleges ¶¶ 1 through 82 of the FAC as if fully set forth herein.

22

132.     HPT has maintained valid business relationships with many vendors, resellers, and customers, including at least Defendants LPE and Vengeance.

133.     HPT has a reasonable expectation that the relationships with its vendors, resellers and customers will continue and will not be disrupted by Defendants' conduct.

134.     Defendants knew of HPT's relationships and expectations, but intentionally, wrongfully, and unjustifiably interfered with those relationships.

135.     Specifically, Defendants have solicited vendors, customers and suppliers of HPT (including at least Defendants LPE and Vengeance) to purchase hacked license keys and/or versions of software with licensing defeated from Defendants (including at least Defendants Johnson, JOHN DOE 2, and JOHN DOE 4), have sold hacked license keys and versions of software with licensing defeated to third parties, and/or have interfered with HPT's relationships with its vendors, resellers, and customers (including at least Defendants LPE and Vengeance).

136.     As a result of Defendants' actions, HPT has suffered irreparable harm for which it has no adequate remedy at law.  Unless enjoined, Defendants will continue to harm HPT's business, causing further irreparable harm to HPT.

137.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** HPT respectfully prays for judgment against Defendants and in favor of HP Tuners, LLC as follows:

1.    Awarding and ordering an accounting and disgorgement of all Defendants' profits and/or damages suffered by Plaintiff due to Defendants' misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

      a.  the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A);

      b.  the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

      c.  the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.; and

      d.  the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

2.    Awarding Plaintiff exemplary damages as authorized by statute for Defendants' willful misappropriation.

3.    Enjoining Defendants from using misappropriated trade secrets pursuant to statute.

4.    Entry of a declaratory judgment that Defendants' conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (a)(4).

5.    Enjoining Defendants from accessing HPT's Protected Computers.

6.    Awarding such other and further relief as may be just and proper caused by Defendants' violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A) and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

7.    Awarding HPT compensatory damages, in an amount to be proved at trial.

8.    Awarding pre- and post-judgment interest to HPT.

9.    Awarding HPT a preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

      a.  Passing off any of their products or services as those of HPT;

b.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, products or services;

c.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with HPT or any of HPT products or services; and

d.  Unfairly competing with HPT in any manner.

10.  An award of damages in an amount to be proved at trial based on Defendants' unfair competition.

11.  An award of damages in an amount to be proved at trial based on Defendants' breach of contract.

12.  An award of damages in an amount to be proved at trial based on Defendants' tortious interference with HPT's prospective contractual or economic relations.

13.  An order that Defendants be required to file with the Court and to serve upon HPT counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

14.  An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute.

15.  An award of such other and further relief as the Court deems just and proper.


Dated this 18th day of April, 2019                RESPECTFULLY SUBMITTED,

**HP TUNERS, LLC**

By: *s/ Kal Shah*
    Kal K. Shah
    Lowell D. Jacobson

Trevor J. Illes
BENESCH FRIEDLANDER COPLAN &
  ARONOFF, LLP
333 West Wacker Drive, Suite 1900
Chicago, Illinois 60606
P: 312.212.4949
F: 312.767.9192
kshah@beneschlaw.com
ljacobson@beneschlaw.com
tilles@beneschlaw.com

Andrew P. Bleiman
MARKS & KLEIN
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
P: 312.206.5162
andrew@marksklein.com

*Attorneys for HP Tuners, LLC*