UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) ) |
| *Plaintiff*, | ) Civil Action No. 1:18-cv-04670 ) |
| vs. | ) Hon. Steven C. Seeger ) |
| DEVIN JOHNSON, et al, | ) Magistrate Judge M. David Weisman ) |
| *Defendants*. | ) |

**DECLARATION OF ION SOLTAN
IN SUPPORT OF PLAINTIFF HP TUNERS, LLC'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT DEVIN JOHNSON**

I, ION SOLTAN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2) that the following statements are true and correct:

1. I am Director of Engineering at Plaintiff HP Tuners. I have personal knowledge of the matters set forth herein, and I would be able to competently testify thereto if called to do so.

2. In conjunction with this litigation, HP Tuners has conducted its own investigation in an effort to assess the conduct attributable to each defendant. This has included, among other avenues, third-party discovery of ISPs and payment networks.

3. For Defendant Devin Johnson, this also included his PayPal account, which he used in conjunction with at least some of the activities set forth in the FAC. Investigation of the transactions listed in Mr. Johnson's PayPal account, along with other activity (such as offer and provision of hacked and cracked HPT software), has enabled HPT to identify certain activity set forth in the complaint that is attributable to Mr. Johnson.

4. As concerns Count I—Technological Circumvention of measures to protect HPT's software, in violation of the DMCA—HPT's investigation has indicated what HPT believes to be no fewer than 60 distinct acts of such technological circumvention, the first of which seems to have occurred no later than August 30, 2017. However, as HPT was unable to get any detail from Mr. Johnson or other involved parties, it is likely that many of these transactions relate to multiple instances of technological circumvention. Likewise, HPT believes that numerous other instances of technological circumvention by Mr. Johnson occurred, but have not yet been discovered and are not indicated in his PayPal transaction history.

5. As concerns Counts IV and VI, Unfair Competition and Tortious Interference, based on the identified transactions from Mr. Johnson's PayPal account, HPT reasonably believes that Mr. Johnson was unjustly enriched to the amount of no less than $8825.06, from selling cracked software with licensing defeated. Because Mr. Johnson sold cracked HPT software for less than HPT would have sold authentic software and associated tuning credits, HPT estimates that its actual losses from this conduct are substantially higher. In addition, HPT strongly suspects that it has suffered substantial losses from other activities attributable to Mr. Johnson of which it is not presently aware.

6. In addition, some of HPT's then-customers purchased cracked HPT software from Mr. Johnson. Such software was improperly and unlawfully modified such that it was operable without the purchase of licenses or tuning credits from HPT. HPT has positively identified 23 such customers, though it strongly suspects that Mr. Johnson has provided cracked HPT software to other former HPT customers of which HPT is not presently aware. HPT believes that, absent Mr. Johnson's misconduct, those customers would have continued to transact with HPT on an ongoing basis, including purchases of software updates, licenses, and/or tuning credits; but their acquisition

from Johnson of cracked software with licensing bypassed meant that such future transactions with HPT (such as subscriptions or additional licenses or tuning credits) would never occur, and would not have been captured in any separate transactions with Mr. Johnson.

7. For example, HPT believes that one particular such customer it identified would have purchased 42 HPT tuning credits per year (for $2100) over each of the last 2 years for a total of $4200 over that period based on his prior purchasing history and high-volume use of HPT's software. Based on his past usage and purchasing history, HPT reasonably estimates that this particular customer would have purchased 42 HPT tuning credits per year for each of the next 10 years, for a total of $21,000. In sum, HPT estimates that the diversion of this particular customer relationship has cost it no less than $25,200.

8. For the other 22 customers, the value of each such diverted relationship would necessarily vary according to each individual; HPT reasonably estimates that the "lifetime loss" of such economic transactions as a result of Mr. Johnson's conduct averages to $2000 per customer for each of the 22 other diverted customers, for a total of $44,000.

9. HPT has expended substantial attorney fees and costs on redressing Mr. Johnson's misconduct as set forth in the FAC. As requested in the FAC and as permitted by statute, HPT thus seeks to hold Mr. Johnson responsible for roughly 25% of its overall attorney fees in this case, including full costs and fees for all tasks solely related to Mr. Johnson but excluding any tasks solely related to other defendants. HPT will file a detailed computation of its reasonable attorney fees and associated costs following entry of judgment in this case consistent with the deadline set by the Court in accordance with the Federal Rules, Local Rules, and Judge Seeger's Case Procedures.

8. HPT has suffered irreparable harm from Mr. Johnson's circumvention of HPT's technological measures to protect its copyrighted software, unfair competition with HPT, and tortious interference with HPT's contractual and ongoing and prospective economic relationships. HPT will continue to suffer harm that cannot adequately be compensated should Mr. Johnson's ongoing misconduct not be enjoined.

Executed on February 11, 2020, in Buffalo Grove, Illinois.

Ion Soltan